UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| JOHN D. TAYLOR and STEVE K. TAYLOR, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 7:13-cv-0112-O-BL |
| WALMART PREPAID MONEY CARDS and WALMART CORPORATE OFFICE, | § § § § | |
| Defendants. | § | Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Before the Court is a Complaint filed by Plaintiffs John D. Taylor and Steve K. Taylor (collectively, the "Taylors"), who are proceeding *pro se* and *in forma pauperis*, against Defendants Walmart Prepaid Money Cards and Walmart Corporate Office (collectively, "Walmart"). Pursuant to 28 U.S.C. § 636(b)(1), the District Court referred this matter to the United States magistrate judge on September 17, 2013. (Doc. 7.) This Court granted permission for the Taylors to proceed *in forma pauperis* on November 19, 2013. (Doc. 10.) In their Complaint, the Taylors allege, *inter alia*, that Walmart is infringing upon their various intellectual property rights in the "first and original prepaid money card products." (*See* Doc. 3.) Based on applicable law, the relevant filings, and the Taylors' history of vexatious litigation, the magistrate judge recommends that this case be dismissed with prejudice and that the Taylors be sanctioned monetarily and barred from filing any future complaint, which is rooted in the same allegations, without permission from the Court.

## I. LITIGATION HISTORY

The Taylors are not new to litigating these claims in federal court. In 2001, the Taylors brought copyright and patent infringement claims in an action against twenty-six corporate defendants. *See Taylor v. I.B.M.*, 7:01-CV-0216-R (N.D. Tex. Feb. 19, 2002) (Buchmeyer, J.). Specifically, believing they had conceived of and created the first "pre-paid cash cards," the Taylors asserted that the defendants had infringed upon their copyrights and pending patent application by making, promoting, and issuing such cards. As a remedy, the Taylors asked for $1 trillion in actual damages, $3 trillion in special exemplary damages, court costs, reasonable attorneys' fees, and 51% of any future profits in such cards sold by the defendants. The District Court dismissed the case with prejudice with respect to all defendants and ordered costs taxed against the plaintiffs. The Taylors appealed, and the Fifth Circuit affirmed the District Court's decision, stating that the "plaintiffs failed to plead an actionable claim." *Taylor v. IBM.*, 54 Fed. Appx. 794, *1 (5th Cir. 2002) (unpublished decision). The Fifth Circuit also sanctioned the Taylors, stating that "[i]n light of the time and money expended by appellees in defending this wholly frivolous lawsuit, appellants are hereby ordered to pay to this court the sum of $500."[1] *Id*. (citing *Ferguson v. Mbank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986); *Prather v. Neva Paperbacks, Inc*., 410 F.2d 698, 700 (5th Cir. 1969)).

In 2006, the Taylors returned to District Court and brought practically indistinguishable copyright and patent infringement claims against twenty-four corporate defendants, of which some had been defendants in the 2001 lawsuit. *See Taylor v. MasterCard Int'l. Inc.*, 7:06-CV-0123-R (N.D. Tex. Oct. 27, 2006) (Buchmeyer, J.). Apparently applying a different computational method for damages, the Taylors asked for $87 million in actual damages, $187

---

[1] Court records do not indicate payment of the $500 sanction.

million in special exemplary damages, court costs, attorneys' fees, and an injunction "against Defendants to remove their prepaid cash cards off all markets, without exception and punish the Defendants to the full extent of the Law." The District Court again dismissed the case with prejudice with respect to all defendants and again ordered costs taxed against the plaintiffs. In addition to submitting statements of court costs and attorneys' fees, totaling approximately $140 thousand,[2] several defendants moved for sanctions against the Taylors, which the District Court denied.

The Taylors have now returned to District Court for a third time and are alleging that Walmart has infringed upon the Taylors' intellectual property rights in the same prepaid cash cards at issue in the previous lawsuits, by producing, marketing, and selling Walmart prepaid money-card products. (*See* Doc. 3.) In addition to alleging copyright and patent infringement claims, the Taylors have also alleged trademark infringement under the Lanham Act and Texas common law.[3] *Id*. To support their claims, the Taylors submitted various exhibits, including documents filed with the Copyright Office; images of the Taylors' prepaid cash cards and text describing and marketing the cards; screen images captured from various Walmart websites,

---

[2] In the 2006 lawsuit, twelve defendants submitted a Bill of Costs to the Court, which totaled $109, 375.60; MasterCard submitted to the Court a Statement of Attorneys' fees, which totaled $29,582.24.

[3] Evidently, the Taylors have modeled their Complaint on a complaint filed in the Southern District of New York by Louis Vuitton Malletier ("Louis Vuitton") against various defendants for copyright and trademark infringement, *see Louis Vuitton Malletier v. Carroll*, 1:05-cv-03331-TPG (S.D.N.Y. June 27, 2006) (Complaint filed March 30, 2005); the Taylors attached a copy of the first page of Louis Vuitton's complaint to their Complaint. (*See* Doc. 3, pp. 25-26.) In attempting to copy Louis Vuitton's complaint, the Taylors substituted "Texas" for "New York" under various claims made by Louis Vuitton, pursuant to specific New York statutes; consequently, several claims made by the Taylors are pursuant to nonexistent Texas statutes. (*See, e.g.*, Doc. 3, pp. 17-18.) Nevertheless, because all of the Taylors' claims are premised upon copyright, patent, and trademark infringement, this Report and Recommendation will only address those intellectual property claims.

which market the Walmart MoneyCard; documents filed with the Patent and Trademark Office ("PTO") regarding the Taylors' patent application; corporate documents filed with the Texas Secretary of State; and stock certificates in the Taylors' company. (*See* Doc. 6.) Regarding damages, the Taylors are asking for a permanent injunction to enjoin Walmart from infringing on their intellectual property rights, that Walmart pay "to John Taylor and Steve Taylor each statutory damages in the amount of $1,000,000 per counterfeit infringement," as well as lost profits and other damages "suffered as a result of Defendants intentional and willful conduct . . . ." (*See* Doc. 3, pp. 20-21.)

## II. LEGAL STANDARDS

In proceedings *in forma pauperis*, the court is required to "dismiss the case at any time if the court determines that" the complaint is frivolous or malicious or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B) (2012). "An [*in forma pauperis*] complaint may be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) if it has no arguable basis in law or in fact." *Ruiz v. United States*, 160 F.3d 273, 274-75 (5th Cir. 1998). A claim has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). In § 1915 cases, the court is authorized *sua sponte* to test whether the case is frivolous or malicious before the service of process or before a defendant is required to file an answer. *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990).

Further, dismissal is proper if the complaint has not provided both fair notice of the nature of the claims and plausible factual allegations to support the claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-60, 127 S. Ct. 1955, 1964-67, 167 L. Ed. 2d 929 (2007); *see also*

*Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008). Thus, to avoid dismissal for failure to state a claim, a plaintiff must plead sufficient facts, not mere conclusory allegations or "blanket assertions." *See Twombly*, 550 U.S. at 555-56 & n.3; *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). Although *pro se* complaints are held to less stringent standards, a *pro se* complaint must still "show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal." *Fantroy v. First Fin. Bank, N.A.*, No. 3:12-CV-82-N-BH, 2013 WL 4434913 at *3 (N.D. Tex. August 19, 2013) (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)).

### III. INTELLECTUAL PROPERTY CLAIMS

This lawsuit, as well as the two previous lawsuits, appears to stem from the Taylors' unwavering misunderstanding about fundamental principles of intellectual property law. Namely, the Taylors believe that because they conceived of the idea for the first prepaid cash card, they are entitled to copyright, patent, and trademark protection in such products. Notwithstanding the fact the Taylors have failed to plead sufficient factual allegations to state any claim under copyright, patent, or trademark law, their claims are also frivolous because they have no arguable basis in law or fact.

**A.  Copyright**

To establish copyright infringement, a plaintiff must prove (1) ownership of a valid copyright, and (2) copying by a defendant of copyrightable expression from the plaintiff's work. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991); *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004).

While a certificate of registration is prima facie proof of a valid copyright and that the registrant owns the copyright, registration is not dispositive as to whether an expression is

copyrightable. *See id.*; *Lakedreams v. Taylor*, 932 F.2d 1103, 1108 n.10 (5th Cir. 1991). Only "original works of authorship fixed in any tangible medium of expression" are afforded copyright protection. 17 U.S.C. § 102(a). To be original, the fixed expression must have been independently created by the author and must contain some "modicum of creativity." *See Feist*, 499 U.S at 346-47. "In no case does copyright protection . . . extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." *Id.* § 102(b); *see also Feist*, 499 U.S. at 356 (explaining that § 102 preserves the protection for expression, but not ideas); *Golan v. Holder*, 132 S. Ct. 873, 890 181 L. Ed. 2d 835 (2012) ("The idea/expression dichotomy is codified at 17 U.S.C. § 102(b) . . . . [T]he author's expression alone gains copyright protection.").

To prove actionable copying, the plaintiff must show that (1) "the alleged infringer actually used the copyrighted material to create his own work," and (2) the two works are substantially similar. *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994).

The Taylors submitted various exhibits to ostensibly show copyright infringement, including their Certificate of Registration from the Copyright Office, documents submitted to the Copyright Office, and screen images captured from various Walmart websites, which market the Walmart MoneyCard. Aside from the short phrase, "pre-paid cash cards," no expression in the Taylors' work appears substantially similar to expression on Walmart's websites.

The Fifth Circuit's decision from the Taylors' first lawsuit is instructive here:

The Copyright Act does not protect fragmentary words or short phrases, such as "pre paid cash cards." Moreover, where all that has been copied is plaintiffs' idea, there is no copyright infringement. To the extent plaintiffs' copyright claims are based on defendants' alleged use of parts of their copyrighted textual description,

> those claims are insufficient as a matter of law because use of that description was only incidental to defendants' alleged use of the idea of prepaid cash cards and because the allegedly copyrighted expression is inseparable from the idea for prepaid cash cards.

*Taylor*, 54 Fed. Appx. at *1 (citations omitted).

In their complaint and supplementary exhibits, the Taylors did not identify any specific copyrightable expression that Walmart copied, how Walmart actually used the Taylors' material to create Walmart prepaid money-card products, or how any works are substantially similar. Thus, the Taylors have not alleged actionable copying and have not stated a claim for copyright infringement. Further, to the extent the Taylors are suing Walmart for copyright infringement of their idea for the prepaid cash card, the Taylors' copyright claims are frivolous because they have no cognizable legal basis.

**B.     Patent**

Patent ownership vests upon issuance of a patent by the PTO to the inventor. *See* 35 U.S.C. §§ 2(a), 151-54. Patents may be issued for any "new and useful" invention that is not obvious to a "person having ordinary skill in the art." *See* 35 U.S.C. §§ 102-03; *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 12-15, 86 S. Ct. 684, 691-92, 15 L. Ed. 2d 545 (1966).

In their supplementary exhibits, the Taylors included their patent application, which the PTO published in 2004; their application to renew their abandoned patent application, submitted in March 2008; and the PTO's decision granting renewal of their patent application, issued in June 2008. The Taylors *did not include*, however, the PTO's action from January 2009, in which the PTO issued a "final rejection" of the Taylors' patent application, pursuant to 35 U.S.C. §§ 102-03, or the PTO's "Notice of Abandonment" from July 2010.[4]

---

[4]     *See* http://portal.uspto.gov/pair/PublicPair. The public may view documents relevant to the Taylors' patent application, under Application Number 09/973,626.

Because the PTO rejected and deemed abandoned the Taylors' patent application, the Taylors do not have the attendant rights of a patent owner in prepaid cash cards and therefore, under the Patent Act, the Taylors cannot prevent Walmart from making, using, selling, offering to sell, or importing such products. *See* 25 U.S.C. § 271. Accordingly, the Taylors' claim of patent infringement has no basis in law or fact and is thus frivolous.

**C.     Trademark**

In Texas, protection for marks used in commerce is available under the Lanham Act (the Federal Trademark Act), the Texas Trademark Act, and Texas common law. In order to acquire protection under the Lanham Act or the Texas Trademark Act, one must register the mark either with the U.S. Patent and Trademark Office's Principal Register, 15 U.S.C. § 1051, or with the Texas Secretary of State, TEX. BUS. & COM. CODE ANN. § 16.052 (West 2013). The Taylors specifically claimed trademark infringement under the Lanham Act and Texas common law.

The Taylors did not allege or provide evidence that they registered any marks (pursuant to federal or state statutes). Without meeting the statutory registration requirements, any trademark action under the Lanham Act is baseless and thus frivolous.

Under Texas common law, one acquires exclusive ownership of a mark by both adopting and using the mark in trade. *Blue Bell, Inc. v. Farah Mfg. Co., Inc.*, 508 F.2d 1260, 1264-65 (5th Cir. 1975); *see also Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 47 (Tex. App.—Houston [14th Dist.] 1992, no writ.) (discussing the elements required when seeking a permanent injunction for trademark infringement and explaining how a mark is classified and eligible for protection). The owner of a distinctive mark is the first person to use the mark on goods or in connection with services in commerce in order to identify and distinguish such goods and services from others. *Blue Bell*, 508 F.2d at 1265. "Mere adoption of a mark without bona fide

use, in an attempt to reserve it for the future, will not create trademark rights." *Id.* at 1267. Likewise, advertising alone does not establish trademark rights at common law. *Id.* at 1265. Further, nonuse of a mark in commerce may constitute abandonment of the mark. *Condom Sense, Inc. v. Alshalabi*, 390 S.W.3d 734, 752 (Tex. App.—Dallas 2012, no pet.).

Aside from submitting exhibits containing images of wallet-sized cards, which are imprinted with various dollar denominations and entitled, "Taylor Corp: Pre-Paid Cash Cards Unlimited," the Taylors neither alleged nor submitted evidence showing how and when the Taylors or their company used such cards in commerce. Therefore, under Texas common law, the Taylors have not established ownership of any trademark associated with their company's products;[5] accordingly, this Court need not reach any further elements of trademark infringement, such as whether there is a likelihood of confusion between marks used by the Taylors and Walmart. Without trademark ownership, the Taylors cannot state a claim for relief under Texas common law. Likewise, the Taylors' claim of trademark infringement has no cognizable legal basis and is thus frivolous.

## IV. SANCTIONS

The Court possesses the inherent power "to protect the efficient and orderly administration of justice and . . . to command respect for the court's orders, judgments, procedures, and authority." *In re Stone,* 986 F.2d 898, 902 (5th Cir.1993). This inherent power includes "the power to levy sanctions in response to abusive litigation practices." *Id. Pro se* litigants have "no license to harass others, clog the judicial machinery with meritless litigation,

---

[5] The Taylors also submitted copies of their Certificate of Incorporation and stock certificates in their company. Incorporation does not establish trademark rights; to establish rights in a mark, a company must "use the marks on goods or with services in commerce." *See Blue Bell*, 508 F.2d at 1265. In their "First Claim for Relief," the Taylors allege "wide popularity of [their] products," but provide no support for this assertion. (*See* Doc. 3, ¶ 41.)

and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.,* 808 F.2d 358, 359 (5th Cir. 1986). Sanctions may be appropriate when a *pro se* litigant has a history of submitting multiple frivolous claims. *See Mendoza v. Lynaugh,* 989 F.2d 191, 195-97 (5th Cir. 1993). Even though the Federal Rules of Civil Procedure have not displaced a court's inherent power to impose sanctions, a court must still provide notice and an opportunity to respond before sanctioning a party under its inherent power.[6] *Kenyon Int'l Emergency Servs., Inc. v. Malcolm*, 12-20306, 2013 WL 2489928, at *6 (5th Cir. May 14, 2013).

Since 2001, the Taylors have filed three lawsuits, rooted in the same allegations of intellectual property infringement, against over fifty defendants. The first two lawsuits were dismissed with prejudice as frivolous or for failure to state a claim, but not before the defendants incurred significant costs. Although the Fifth Circuit levied a $500 dollar sanction against the Taylors for filing a "wholly frivolous lawsuit," and the Court taxed the Taylors for the costs incurred by the defendants in both previous lawsuits, the Taylors were not dissuaded from filing a third frivolous lawsuit, based on practically identical claims, against Walmart.

Despite the fact the Taylors are *pro se* litigants, the previous lawsuits have put the Taylors on notice that their claims are invalid and frivolous. Further, under 28 U.S.C. § 636(b)(1), the Taylors have an opportunity to respond to any part of this report and recommendation prior to the United States district judge's final judgment.

---

[6] "[T]he court ordinarily should rely on the Rules rather than the inherent power" when imposing sanctions for "bad-faith conduct in the course of litigation." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S. Ct. 2123, 2136, 115 L. Ed. 2d 27 (1991). Based on the Taylors' litigation history in conjunction with Rule 11's limitations on monetary sanctions, the magistrate judge recommends the imposition of sanctions under the Court's inherent power, rather than under Rule 11.

## V. CONCLUSION

For the foregoing reasons, the magistrate judge **RECOMMENDS** that any pending motions be **DENIED** and this case be **DISMISSED** with prejudice as frivolous.

Further, the magistrate judge **RECOMMENDS** that each Plaintiff be **SANCTIONED** monetarily, in the amount of $500, and **BARRED** from filing any future complaint, which is rooted in the same allegations, without permission from the Court.

**IT IS THEREFORE ORDERED** that this case is **TRANSFERRED** back to the docket of the United States district judge.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED**.

DATED this 3rd day of December, 2013.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE